UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCY PINDER, IRINA VORONINA, and CARMEN ELECTRA,<br><br>　　　　　　　　Plaintiffs,<br><br>　　- against -<br><br>S. DICARLO, INC., d/b/a DICARLO'S GENTLEMEN'S CLUB, and TESS COLLINS,<br><br>　　　　　　　　Defendants. | Case No.:  1:18-cv-296 (MAD/CFH)<br><br><br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

　　　　Plaintiffs LUCY PINDER, IRINA VORONINA, and CARMEN ELECTRA (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants S. DICARLO, INC., d/b/a DICARLO'S GENTLEMEN'S CLUB, and TESS COLLINS, (collectively, "Defendants"), respectfully allege as follows:

## BACKGROUND

　　　　1.　　This is an action for damages and injunctive relief relating to Defendants' theft, alteration, and unauthorized publication of sexually suggestive images of Plaintiffs, each of whom are world renowned professional models, actresses and/or businesswomen, in order to promote their strip club, DiCarlo's Gentlemen's Club ("DiCarlo's" or, the "Club"), located in Albany, New York.

　　　　2.　　As detailed below, Defendants' theft and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), prohibiting false or misleading use of a person's image for purposes of advertising; b) violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; and c) violation of New York's Deceptive

1

Trade Practices Act (New York G.B.L. §349), which prohibits deceptive business practices.

3. In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs seek an Order from this Court permanently enjoining Defendants from using their Images to promote DiCarlos's, via any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6. According to publicly available records, defendant S. DiCarlo, Inc. ("S. Dicarlo"), is a corporation formed under the laws of the state of New York, with a principal place of business located at 1165 Central Avenue, Albany, New York.

7. Upon information and belief, defendant Teresa (a/k/a "Tess") Collins ("Collins") is a resident of the State of New York, and is, and at all relevant times was, the owner, principal and/or chief executive S. DiCarlo.

8. Venue is proper in the United States District Court for the Northern District of New York because Defendants' principal place of business is located within this District, a significant portion of the alleged causes of action arose and accrued in this District, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in this District.

## PARTIES

*Plaintiffs*

9. Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of the United Kingdom.

10. Plaintiff Irina Voronina ("Voronina") is a well-known professional model, and a resident of Los Angeles County, California.

11. Plaintiff Carmen Electra ("Electra") is a well-known professional actress, singer, model, and businesswoman, and a resident of Los Angeles County, California.

*Defendants*

12. According to publicly available records, defendant S. DiCarlo is corporation formed under the laws of the State of New York. During times relevant to this action, S. DiCarlo operated DiCarlo's, a strip club located at 1165 Central Avenue, Albany, New York 12205.

13. Collins is identified by the New York State Liquor Authority as the principal of DiCarlo's, and listed by the New York Secretary of State as the Chief Executive Officer of S. DiCarlo Restaurant.

## FACTUAL ALLEGATIONS

14. As set forth immediately below, each Plaintiff is an extremely well-known professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

15. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

16. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed DiCarlo's.

17. In the case of each and every Plaintiff, such appearance was false.

18. Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

***Plaintiffs' Backgrounds and Careers***

19. Pinder is an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has been featured in hundreds of magazines, including *FHM, Loaded, Nuts*, and the *Daily Star*, as well has appeared on numerous occasions on the *FHM* "100 Sexiest Women in the World" list. In addition, Pinder has an established and developing acting career with many TV appearances and Film credits, and has appeared on shows such as *I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, Dream Team and Bo! in the USA*. Pinder was a contestant on *Celebrity Big Brother*, had starring roles in films such as *Strippers vs Werewolves, The Seventeenth Kind, Age of Kill and Warrior Savitri.*

20. That we know of, Pinder is depicted in the photos in Exhibit "A" to promote DiCarlo's on its Facebook and Instagram pages. These misappropriated Images of Pinder were intentionally altered to make it appear as though Pinder was a stripper working at DiCarlo's, or that she endorsed the Club. This false appearance was bolstered by the copy placed by Defendants beside, or within, the misappropriated Images of Pinder. For example, the first page

of Exhibit A contains a misappropriated Image of Pinder above the Defendants-generated copy: "To Strippers Everywhere. There's no need to lie about paying college tuition. Yours is an honorable profession. Hold your head high, and bare all with pride, for it is far nobler to work the pole than the shaft. Remember that." (Exhibit A). An additional misappropriated Image of Pinder, which depicts her in a Santa cap and sexually suggestive red outfit, was used to promote the "DiCarlo's Gentlemen's Club Secret Stripper," which is apparently a play on "Secret Santa." The Club wrote, over the Image of Pinder: "Be at DC's every night at 11 pm to see if YOU have the 'Secret Stripper.'!." (*Id.*). A third misappropriated Image of Pinder was used to promote the Club's "Best Breasts" contest, and beside this Image the Defendants wrote: "This Saturday! Don't miss the first in this years 'Best Of' Contest Series! Be a judge for he contest, and YOU can help pick this years winners!" (*Id.*).

21. Pinder has never been employed at DiCarlo's, has never been hired to endorse DiCarlo's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

22. Voronina, who was named *Playboy's* Miss January 2001, has represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines, including: *FHM*, *Maxim*, *Playboy* (in 20 countries), *Max* (Italy), *Ocean*, *Shape*, *944*, *Knockout*, *Q* (UK), *People* (Australia), and most recently *Kandy*, *Rukus*, *Vape* and *Browz* magazines. In 2008 Voronina was named the St. Pauli Girl spokesmodel, completed a 12-month public relations tour across United States, and became the first ever St. Pauli Girl to ring the NYSE closing bell, representing Constellation Brands. In 2013 Voronina was named *Kandy Magazine's* Model of the Year as a result of her fans

downloading the highest number of digital issues that year. Voronina has more than 4 million followers on Facebook, Instagram, Twitter and YouTube. (Facebook: 3.5 million, Instagram: 437,000, Twitter: 105,000).[1] As an actress, Voronina got her first big screen break in *Reno 911!: The movie*, and additional credits include *Svetlana*, *Saul of the Mole Men*, *iCarly*, *Balls of Fury*, and *Piranha 3DD*, to name a few. Most recently, Voronina has been seen in supporting roles in *Laser Team* and *Killing Hasselhoff*, and is currently starring in the independent action film *Scramble*, which she also co-produced.

23. That we know of, Voronina is depicted in the photo in Exhibit "B" to promote DiCarlo's on its Facebook page. This misappropriated Image of Voronina was intentionally altered to make it appear as though Voronina was a stripper working at DiCarlo's, or that she endorsed the Club. This false appearance was bolstered by the copy Defendants placed beside, and within, the misappropriated Image of Voronina, which depicts Voronina in a devil costume in order to promote the DiCarlo's "Sinners and Saints Halloween Party," at which DiCarlo's invites the public to "Come play with the DC Dolls all weekend long!"

24. Voronina has never been employed at DiCarlo's, has never been hired to endorse DiCarlo's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

25. Electra is a world famous actress, recording artist, and entrepreneur, who over the past two (2) decades has consistently been one of Hollywood's most versatile personalities and performers. Electra was first signed by music superstar Prince, who produced her first, self-titled album on his Paisley Park record label. Electra then ventured into acting, first with regular roles on *Baywatch* and MTV's *Singled Out*, and then into film, with starring roles in blockbuster

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

hits including *Scary Movie*, *Dirty Love*, *Cheaper by the Dozen 2*, and *Meet the Spartans*. Electra won the role as the face of MAX Factor, following in the famous footsteps of Marilyn Monroe and Jaclyn Smith, and in 2006, became a published author with the release of her book, *How to be Sexy*. Electra also formed a dance troupe, The Bombshells, who perform nationwide, and recently released the fitness DVD series, "Carmen Electra's Aerobic Striptease." In 2009, Electra appeared live on stage in MGM Grand Vegas' Crazy Horse Burlesque Show to sold-out audiences; in 2010, Electra starred in the film, *Oy Vey, My Son is Gay*, and in 2011 Electra starred in the film *2-Headed Shark Attack*, alongside Charlie O'Connell, served as a guest judge on *Britain's Got Talent*, and made reoccurring guest appearances on CW's hit show, *90210*. In 2012, Electra released her return-to-music single, "I Like it Loud," featuring Grammy-nominated producer Bill Hamel, which hit the number 25 spot on Billboard's Dance Club Play Chart. Since 2014 Electra has released numerous additional singles to worldwide acclaim. Electra can currently be seen as the host of WEtv's new reality docu-series *Ex Isle* which premiered in January 2016. She has more than three million Facebook followers, 740,000 Instagram followers, and nearly 400,000 Twitter followers.

26. That we know of, Electra is depicted in the photo in Exhibit "C" to promote DiCarlo's on its Facebook page. This misappropriated Image of Electra was intentionally altered to make it appear as though Electra was a stripper working at DiCarlo's, or that she endorsed the Club. This false appearance was bolstered by the copy Defendants placed beside, and within, the misappropriated Image of Electra, which depicts Electra posing on a stripper poll beneath and above Defendant-generated copy which reads: "Dating a stripper is like eating a noisy pack of chips in church. Everybody looks down at you in disgust but deep down they want some too."

27. Electra has never been employed at DiCarlo's, has never been hired to endorse

DiCarlo's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business***

28. Upon information and belief, Defendants have operated DiCarlo's during the relevant time period, where it engages or has engaged in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

29. Upon information and belief, and in furtherance of its promotion of DiCarlo's, Defendants own, operate and control DiCarlo's social media accounts, including the its Facebook, Twitter, and Instagram accounts.

30. Defendants used the DiCarlo's Facebook, Twitter, and Instagram accounts to promote DiCarlo's, and to attract patrons thereto.

31. Defendants did this for their own commercial and financial benefit.

32. Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that these Plaintiffs either worked as a strippers at DiCarlo's, or endorsed same.

33. Defendants used Plaintiffs' Images, and created the false impression that they worked at or endorsed DiCarlo's in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

34. As Defendants were at all times aware, at no point have any of the above-named Plaintiffs ever been affiliated with or employed by DiCarlo's, and at no point have any of the

Plaintiffs ever endorsed DiCarlo's.

35. All of Defendants' activities, including their theft of Plaintiffs' Images, and their alteration and publication of same, were done without the knowledge or consent of Plaintiffs, and Defendants did not compensate Plaintiffs for its use of their Images.

36. As such, Plaintiffs have never received any benefit for Defendants' use of their Images.

*Standard Business Practices in the Modeling Industry*

37. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

38. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Theft of Plaintiffs' Images*

39. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote their Club by and through various marketing and promotional mediums including, without limitation, DiCarlo's Facebook and Instagram pages.

40. Defendants showcased Plaintiffs' Images on DiCarlo's social media pages in

order to create the false impression that Plaintiffs worked at the Club, or endorsed the Club.

41.     Defendants did so in order to attract clientele to the Club, promote the Club, and thereby generate revenue for Defendants.

42.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed the Club.

43.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.  This is especially so insofar as each Plaintiff's Images have been associated with a strip club, and the implication of Defendants' use of Plaintiffs' Images is that they are each strippers.

44.     At no point were any of the Plaintiffs ever affiliated with DiCarlo's or Defendants.

45.     Each of Plaintiffs' Images was used without her consent.

46.     At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

47.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

48.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Clubs' Websites, Twitter, Facebook, or Instagram accounts.

49.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

50.     Upon information and belief, Defendants have taken the foregoing actions with

the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.: False Endorsement)

51. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

53. Defendants used Plaintiffs Images in order, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at DiCarlo's, or endorsed DiCarlo's.

54. This was done to promote and attract clientele to DiCarlo's, and thereby generate revenue for the Defendants.

55. Thus, this was done in furtherance of Defendants' commercial benefit.

56. Despite the fact that Defendants were at all times aware that the Plaintiffs neither worked at, nor endorsed, DiCarlo's, Defendants nevertheless used Plaintiffs Images in order to mislead potential customers as to Plaintiff's employment at and/or affiliation with DiCarlo's.

57. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at DiCarlo's.

58. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs employment at and/or endorsement of DiCarlo's, and the goods and services provided by DiCarlo's.

59. Due to Defendants' unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs has been damaged in an amount to be determined at trial, and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of N.Y. Civ. Rights Law §§ 50-51)

60. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

61. As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on DiCarlo's social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at DiCarlo's, or endorsed DiCarlo's.

62. At all relevant times, the DiCarlo's social media accounts were used and operated by Defendants' for advertising and trade purposes.

63. The DiCarlo's social media accounts were designed to attract business to the Club, and generate revenue for Defendants.

64. Upon information and belief, Defendants' use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

65. At no point did Defendants ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their social media accounts.

66. Defendants were at all relevant times aware that they never received any Plaintiff's permission or consent to use her Images on any social media account, or any other medium, in order to promote the Club.

67. At no point did Defendants ever compensate Plaintiffs for their use of the Images.

68. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

69. Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs have been damaged in an amount to be

determined at trial.

70.     In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

71.     In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**THIRD CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

72.     Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.     Defendants operated DiCarlo's social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants.  As such, Defendants' operation of the social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

74.     Defendants published Plaintiffs' Images on DiCarlo's social media accounts in order to create the false impression with the public that Plaintiffs were either strippers working at the Club, or endorsed the Club.

75.     As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

76.     As Defendants were at all times aware, Plaintiffs never worked at the Club, never endorsed the Club, and never had any affiliation with the Club.

77. Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent, and was misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Club, or endorsed the Club.

78. As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on the DiCarlo social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

79. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## DEMAND FOR JURY TRIAL

80. Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through third causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Clubs;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
March 8, 2018

                                        **THE CASAS LAW FIRM, P.C.**

                                        By: /s/ John V. Golaszewski
                                            John V. Golaszewski, Esq.
                                            1745 Broadway, 17th Floor
                                            New York, New York
                                            T: 855.267.4457
                                            F: 855.220.9626

                                        *Attorneys for Plaintiffs*