**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LUCY PINDER, IRINA VORONINA, and
CARMEN ELECTRA,

                               Plaintiffs,

v.

S. DICARLO, INC., d/b/a DICARLO'S
GENTLEMEN'S CLUB, and TESS COLLINS,

                               Defendants.

1:18-cv-00296 (BKS/ATB)

_____

**Appearances:**

_For Plaintiffs:_
John V. Golaszewski
The Casas Law Firm, P.C.
1740 Broadway, 15th Floor
New York, New York 10019

_For Defendants:_
Gregory J. Teresi
Bartlett, Pontiff, Stewart & Rhodes, P.C.
One Washington Street
PO Box 2168
Glens Falls, New York 12801

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiffs Lucy Pinder, Irina Voronina, and Carmen Electra bring this action against

Defendants S. DiCarlo, Inc. ("DiCarlo's") and Tess Collins, alleging (1) false endorsement under

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (First Cause of Action); (2) misappropriation

of likeness for advertising purposes under N.Y. Civil Rights Law ("NYCRL") §§ 50–51 (Second

Cause of Action); and (3) deceptive trade practices under N.Y. General Business Law

("NYGBL") § 349 (Third Cause of Action). (Dkt. No. 1). Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (Dkt. No. 63), which Plaintiffs oppose. (Dkt. No. 70). Plaintiffs seek an award of fees and costs associated with Defendants' motion. (*Id.* at 5). For the reasons that follow, Defendants' motion is granted in part and denied in part, and Plaintiffs' request for fees is denied.

## II.    FACTS[1]

### A.    Parties

Plaintiffs are three "well-known professional models and actresses, each of whom earns her livelihood promoting and licensing her image, likeness, and/or identity." (Dkt. No. 70, at 3; Dkt. No. 1, ¶¶ 19, 22, 25). Plaintiffs' careers depend on their "good will and reputation," and "in furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model." (Dkt. No. 1, ¶ 15).

Plaintiff Pinder is "an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models." (*Id.* ¶ 19). She has been "featured in hundreds of magazines" and "has an established and developing acting career with many TV appearances and Film credits." (*Id.*). She was also a "contestant on *Celebrity Big Brother*," and starred in several films such as *Strippers vs. Werewolves* and *The Seventeenth Kind*. (*Id.*).

Plaintiff Voronina "has represented international brands" and has been featured on "the covers and pages of worldwide magazines" including *Maxim* and *Playboy*. (*Id.* ¶ 22). She was named Playboy's Miss January 2001. (*Id.*). She has appeared in several films, including *Reno*

---

[1] The facts are drawn from the Complaint, "the defendants' answer, any written documents attached to the complaint or the answer, any document that is incorporated by reference into the complaint, any document that is 'integral' to the complaint, and any matter of which the court may take judicial notice." *Velarde v. GW GJ, Inc.*, 914 F.3d 779, 781 n.1 (2d Cir. 2019) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011)). The Court "accept[s] the allegations contained in the pleadings as true," with all reasonable inferences drawn in Plaintiffs' favor. *Neopharm Ltd. v. Wyeth–Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016).

*911!: The movie* and *Piranha 3DD*, and is "currently starring in the independent action film *Scramble*." (*Id.*). She has "more than 4 million followers on Facebook, Instagram, Twitter, and YouTube." (*Id.*).

Plaintiff Electra is a "world famous actress, recording artist, and entrepreneur." (*Id.* ¶ 25). She was in television shows such as *Baywatch* and *Singled Out* and has had "starring roles in blockbuster hits including *Scary Movie*, *Dirty Love*, *Cheaper By the Dozen 2*, and *Meet the Spartans*." (*Id.*). She is also a recording artist and published author. (*Id.*). She currently can be "seen as the host of WEtv's new reality docu-series *Ex Isle*." (*Id.*). She has "more than three million Facebook followers, 740,000 Instagram followers, and nearly 400,000 Twitter followers." (*Id.*).

Defendant DiCarlo's, a gentleman's club in Albany, New York, is "in the business of selling alcohol and food in an atmosphere were [sic] nude and/or semi-nude women entertain the business' clientele." (*Id.* ¶ 28). DiCarlo's has "social media accounts, including . . . Facebook, Twitter, and Instagram." (*Id.* ¶ 29). Defendant Collins is "the owner, principal, and/or chief executive" of DiCarlo's. (*Id.* ¶¶ 7, 13).

**B.    Images[2]**

Defendants posted images of Plaintiffs to "promote DiCarlo's on its Facebook and Instagram pages." (*Id.* ¶ 20). Plaintiffs have never been employed at DiCarlo's and the images were used "without any of the Plaintiffs' knowledge, consent, or authorization . . . [or] remuneration." (*Id.* ¶¶ 18, 21, 24, 27).

Specifically, Defendants posted one image of Pinder on Instagram and two images on Facebook. (*Id.* ¶ 20; Dkt. No. 1-1, at 2–4). The Instagram post contained a picture of Pinder,

---

[2] Plaintiffs attached copies of the images and social media posts at issue to their Complaint. (Dkt. No. 1-1).

below which Defendants wrote "[t]o strippers everywhere: There's no need to lie about paying college tuition. Yours is a [sic] honorable profession. Hold your head high, and bare all with pride, for it is far nobler to work the pole than the shaft." (Dkt. No. 1-1, at 2). It was posted with several hashtags, including "peopleofalbany," "striperlife," and "stripclub." (*Id.*). The first Facebook post contains an image of Pinder, "in red lingerie and a Santa hat," (Dkt. No. 70, at 4; Dkt. No. 1-1, at 3), with "DiCarlo's Gentlemen's Club" written above her head and containing the phrase "Be at DC's every night at 11pm to see if YOU have the 'Secret Stripper'!" (Dkt. No. 1-1, at 3). The second Facebook post is Pinder "topless but for what appears to be tape over her breasts." (Dkt. No. 70, at 4; Dkt. No. 1-1, at 4). Above the image is written "DiCarlo's Gentlemen's Club presents the 'BEST OF' Contest Series" and below Pinder's image is written "BEST BREASTS this Saturday 10/22 @ 11pm." (Dkt. No. 1-1, at 4). Next to the image, the post is captioned "This Saturday! Don't miss the first in this years [sic] 'Best Of' Contest Series! Be a judge for the contest, and YOU can help pick this years [sic] winners!" (*Id.*).

Defendants posted one image of Voronina to Facebook. (Dkt. No. 1, ¶ 23). She is depicted in a devil's costume, and the image reads: "DiCarlo's Gentlemen's Club Sinners & Saints Halloween Weekend." (*Id.* ¶ 23; Dkt. No. 1-1, at 6). The caption of the post reads "The party starts TONIGHT! Come play with the DC Dolls all weekend long!" (Dkt. No. 1, ¶ 23; Dkt. No. 1-1, at 6).

Defendants also posted one image of Electra to Facebook. (Dkt. No. 1, ¶ 26). The image "depicts Electra posing on a stripper poll," (*id.*), and reads: "Dating a stripper is like eating a noisy pack of chips in church. Everybody looks at you in disgust but deep down they want some too." (Dkt. No. 1-1, at 9; Dkt. No. 1, ¶ 26).

## III. STANDARD OF REVIEW

The standard of review for a motion under Rule 12(c) is the same as for a motion under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). "For both motions, the Court must accept the allegations contained in the pleadings as true and draw all inferences in the non-movant's favor." *Neopharm*, 170 F. Supp. 3d at 614 (citing *Bank of N.Y.*, 607 F.3d at 922). A complaint "must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court will grant a motion for judgment on the pleadings "if, from the pleadings, the moving party is entitled to judgment as a matter of law." *VCG Special Opportunities Master Fund Ltd. v. Citibank, N.A.*, 594 F. Supp. 2d 334, 340 (S.D.N.Y. 2008).

## IV. DISCUSSION

### A. False Endorsement Claim

Plaintiffs allege Defendants violated Section 43 of the Lanham Act, which prohibits the use of a protected mark in a way that is "likely to cause confusion . . . as to the origin, sponsorship, or approval of [defendants'] goods." 15 U.S.C. § 1125(a)(1)(A). "[T]o establish a claim for false endorsement under Section 43(a), plaintiff must prove that defendants: '(1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval

of the goods or services.'" *Toth v. 59 Murray Enters., Inc.*, No. 15-cv-8028, 2019 WL 95564, at

*5, 2019 U.S. Dist. LEXIS 1355, at *13 (S.D.N.Y. Jan. 3, 2019) (quoting *Burck v. Mars, Inc.*,

571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008)). Defendants argue that Plaintiffs "cannot meet their

burden to raise an issue of fact regarding the false endorsement claim made under the Lanham

Act" because "Defendant has made no false or misleading representation of fact" and "there is

no likelihood of consumer confusion." (Dkt. No. 63-1, at 6–8).[3]

### 1.     False or Misleading Representation of Fact

Plaintiffs allege that Defendants' images "misle[d] potential customers as to Plaintiff's

employment at and/or affiliation with DiCarlo's." (Dkt. No. 1, ¶ 56). Defendants contend that the

images it posted were not literally or impliedly false, and therefore [they] did not violate Section

43 of the Lanham Act. (Dkt. No. 63-1, at 6–7).

"[W]hether a representation is literally or impliedly false is a question traditionally

addressed within the context of false *advertising* claims brought under 15 U.S.C.A. §

1125(a)(1)(B), not in the context of false *endorsement* claims brought under subsection (A) of

the section." *Toth*, 2019 WL 95564, at *5, 2019 U.S. Dist. LEXIS 1355, at *13 (emphasis

added); *see Gibson v. SCE Grp., Inc.*, 391 F. Supp. 3d 228, 244 n.10 (S.D.N.Y. 2019).

For false endorsement claims brought under subsection (A), as here, "the unauthorized

and suggestive use of a person's image can satisfy the requisite element of falsity." *Id.* (citing

*Roberts v. Bliss*, 229 F. Supp. 3d 240, 249 (S.D.N.Y. 2017)); *see also A.V.E.L.A., Inc. v. Estate

of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 208 (S.D.N.Y. 2015) ("[T]he use of an image on

a product can support a claim for false endorsement."); 5 McCarthy on Trademarks and Unfair

---

[3] Defendants do not dispute that Plaintiffs have adequately alleged that the advertisements were used "in commerce" and "in connection with goods or services."

Competition § 28:15 (5th ed.) ("The kind of falsity implicated in these cases is the likelihood of a false implication that plaintiff approves or sponsors the goods or services of the defendant."). In determining whether social media posts "imply that Plaintiffs endorsed Defendants," courts within the Second Circuit have utilized a two-part inquiry: "Do the posts contain an endorsement of Defendants? And if so, is that endorsement fairly attributed to Plaintiffs?" *Id.* at 244.

In *Gibson* the Plaintiffs were, like here, models who alleged that the defendant strip clubs used their images to advertise clubs without their consent, in violation of the Lanham Act. 391 F. Supp. 3d at 235–49. On summary judgment, the court found sufficient evidence of a false endorsement because the clubs "made these posts, or instructed third-party advertisers to create them, to promote their business . . . [and] [e]ach appears on a social media page that prominently displays Defendants' name and most advertise an event at one of Defendants' locations." *Id.* at 245. The court concluded that the plaintiffs presented sufficient evidence that the posts were fairly attributed to the plaintiffs, because they "impl[ied] an association between" the plaintiffs and the defendants by "juxtapos[ing] Plaintiffs' pictures with text referencing Defendants' clubs" and "describ[ing] the women, though not by name, who perform at the clubs directly under Plaintiffs' picture, and therefore impl[ied] that Plaintiffs are the women that the posts describe." *Id.*

Here, Plaintiffs have plausibly alleged that the social media posts contain a false endorsement because the Plaintiffs never endorsed DiCarlos and the Defendants posted their images on its social media pages prominently displaying the club name and "most advertise[d] an event at [the club]." 391 F. Supp. 3d at 245. This endorsement is fairly attributed to Plaintiffs because their pictures are juxtaposed with "text referencing [Defendants'] club[]." *Id.* As such, the Court finds that at this stage Plaintiffs have pled sufficient facts to overcome Defendants'

motion for judgment on the pleadings. *See Toth*, 2019 WL 95564, at *5, 2019 U.S. Dist. LEXIS 1355, at *14 ("Where the parties do not dispute that plaintiffs never endorsed or agreed to be associated with the Clubs, the prominent display of plaintiffs' images in the Clubs' advertising constitutes false or misleading representations of fact.").

## 2.  Likelihood of Consumer Confusion

"It is well settled that the crucial determinant in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinary prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Toth*, 2019 WL 95564, at *5, 2019 U.S. Dist. LEXIS 1355, at *14–15 (quoting *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990) (internal quotation marks omitted)). To determine whether there is a likelihood of consumer confusion, the Court applies a modified version of the Second Circuit's multi-factor test from *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), omitting the elements that are inapplicable to false endorsement claims. The relevant *Polaroid* factors are: "(1) strength of the trademark; (2) evidence of actual consumer confusion; (3) evidence that the imitative mark was adopted in bad faith; (4) similarity of the marks; (5) proximity of the products and their competitiveness with one another; and (6) sophistication of consumers in the relevant market." *Toth*, 2019 WL 95564, at *5, 2019 U.S. Dist. LEXIS 1355, at *15; *see also Gibson*, 391 F. Supp. 3d at 245 (citing *Toth*).[4] The "application of the Polaroid test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (quoting *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)). Additionally, "the likelihood

---

[4] Defendants assert that the proximity of the products factor is irrelevant in this case. (Dkt. No. 63-1, at 10–11).

of confusion is a factual question, centering on the probable reactions of the prospective purchasers of the parties' goods." *Pirone*, 894 F.2d at 584–85.

Here, Defendants argue that the *Polaroid* factors weigh against the likelihood of consumer confusion because "Plaintiffs are not sufficiently recognizable such that their appearance would confuse customers." (Dkt. No. 63-1, at 11). Plaintiffs respond that "Defendants nowhere explain how or why Plaintiffs' have failed to meet the liberal pleading standard of Rule 12 such that they should be denied the factual inquiry envisioned by the Second Circuit on a Lanham Act claim, and their failure (and inability) to do so is alone dispositive of their motion." (Dkt. No. 70, at 9).

For a false endorsement claim, "the 'mark' is the plaintiff's persona and the 'strength of the mark' refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed." *Toth*, 2019 WL 95564, at *6, 2019 U.S. Dist. LEXIS 1355, at *16 (quoting *Jackson v. Odenat*, 9 F. Supp. 3d 342, 356 (S.D.N.Y. 2014)). The strength of a plaintiff's mark "is a crucial factor in determining likelihood of consumer confusion." *Pelton v. Rexall Sundown, Inc.*, No. 99-cv-4342, 2001 WL 327164, at *3, 2001 U.S. Dist. LEXIS 3825, at *9 (S.D.N.Y. Apr. 4, 2001).

Defendants argue that "while Plaintiffs offer their social media following, magazine appearances, and various promotional campaigns as evidence of recognition, this lends little credence to the strength of their respective marks." (Dkt. No. 63-1, at 9). Plaintiffs, on the other hand, argue that they "have alleged they are well-known professional models, have provided modeling credits to support such allegations, and during discovery they will produce evidence to support those allegations." (Dkt. No. 70, at 11).

In support of their argument, Defendants rely on a summary judgment decision in *Pelton* in which the court found there was no issue of material fact because there was "simply no evidence that a consumer who sees this photograph is likely to recognize Plaintiff." *Pelton*, 2001 WL 327164, at *4, 2001 U.S. Dist. LEXIS 3825, at *10. "While that type of conclusion is appropriate at the summary judgment stage, it is premature" for a Rule 12(c) motion. *Mayes v. Summit Entm't Corp. ("Mayes I")*, No. 16-cv-06533, 2018 WL 566314, at *4, 2018 U.S. Dist. LEXIS 8902, at *11 (E.D.N.Y. Jan. 18, 2018), *report and recommendation adopted in relevant part*, 287 F. Supp. 3d 200 (E.D.N.Y. 2018).[5]

Here, to prevail, "Defendants must show that, assuming the facts stated in the complaint are true, this Court cannot conclude that Plaintiffs' identity carries enough recognition capable of causing confusion." *Mayes I*, 2018 WL 566314, at *4, 2018 U.S. Dist. LEXIS 8902, at *9. Plaintiffs have alleged they are "well-known professional models and actresses." (Dkt. No. 70, at 3; Dkt. No. 1, ¶¶ 19, 22, 25). In support of this contention, Plaintiffs allege that they have appeared in various well-known magazines, television shows, and movies. (Dkt. No. 1, ¶¶ 19, 22, 25). Plaintiffs also allege that they have a wide social media following, which includes more than 4 million followers for Plaintiff Voronina, (*id.* ¶ 22), and "more than three million Facebook followers, 740,000 Instagram followers, and nearly 400,000 Twitter followers" for Plaintiff Electra. (*Id.* ¶ 25).

The court in *Mayes I* found that it was "borderline facetious to suggest that [p]laintiffs who purportedly have appeared on [well-known television shows], or who have appeared in magazines such as Vogue or Esquire . . . have failed to make plausible allegations of public

---

[5] Defendants argue that "Plaintiff's [sic] cannot raise any genuine issues of fact as to any of these claims," as if this was a motion for summary judgment under Federal Rule of Civil Procedure 56. (Dkt. No. 63-1, at 6). On a Rule 12(c) motion, however, the Court must "accept the allegations contained in the pleadings as true and draw all inferences in the non-movant's favor." *Neopharm Ltd.*, 170 F. Supp. 3d at 615 (citing *Bank of N.Y.*, 607 F.3d at 922).

recognition." 2018 WL 566314, at *4; 2018 U.S. Dist. LEXIS 8902, at *10. Here, as in *Mayes I*,

"Plaintiffs' allegations are more than sufficient to support the conclusion that their images carry

some level of public recognition." *Id.*; *see also Bondar v. LASplash Cosmetics*, No. 12-cv-1417,

2012 WL 6150859, at *7, 2012 U.S. Dist. LEXIS 175873, at *27–29 (S.D.N.Y. Dec. 11, 2012)

(holding that a model plaintiff survived judgment on the pleadings because the Lanham Act

"does not require celebrity, only a likelihood of consumer confusion" and the plaintiff had

alleged that "she is a 'well known' fashion model, who has appeared on catwalks for prestigious

designers and been featured in a number of popular fashion magazines").

    Defendants' assertion that "Plaintiffs' complaint offers no pleading that actual confusion

occurred as a result of their images appearing in advertisements" does not alter this conclusion.

(Dkt. No. 63-1, at 10). While Plaintiffs do not allege specific facts, they do allege that

"Defendants' use of Plaintiffs' Images did in fact cause consumer confusion." (Dkt. No. 1, ¶ 58).

And, as Plaintiffs argue, "there is no consumer data before the Court at this juncture because

Plaintiffs have not been afforded discovery to evaluate and produce to the Court such data."

(Dkt. No. 70, at 10). Given Plaintiffs well-pleaded allegations that their images carry some level

of public recognition, "it is possible that discovery will indicate [their] mark[s] [are] strong

enough to cause a likelihood of consumer confusion." *Bondar*, 2012 WL 6150859, at *7, 2012

U.S. Dist. LEXIS 175873, at *29.[6]

---

[6] Defendants make a similar argument for why the sophistication of the consumers in the relevant market weighs in their favor. (Dkt. No. 63-1, at 11). According to them, the fact that "Plaintiffs' complaint offers no pleading that consumer confusion occurred" somehow means that "whether Defendants' consumers are sufficiently sophisticated to understand that the appearance of Plaintiffs' likenesses in advertisements or internet postings are no an indication of endorsement" should be decided in their favor. (*Id.*). This argument is premature at this stage of the proceedings where the Court assumes the well-pleaded allegations of the complaint are true and draws all inferences in Plaintiffs' favor.

Defendants' contention that Plaintiffs have failed to allege bad faith is similarly unavailing. "Under this factor, [courts] look to 'whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill.'" *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996) (quoting *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir.1991)). Plaintiffs allege that "Defendants used Plaintiff's Images in order . . . to create the false impression with the public that Plaintiffs either worked at DiCarlo's, or endorsed DiCarlo's." (Dkt. No. 1, ¶ 53). This was done "to promote and attract clientele to DiCarlo's." (*Id.* ¶ 54). Plaintiffs have therefore plausibly alleged bad faith.[7]

Given Plaintiffs' well-pleaded allegations that they are well-known actresses and models, and thus their images carry some level of public recognition and support a likelihood of consumer confusion, the Court denies Defendants' motion for judgment on the pleadings as to Plaintiffs' Lanham Act claims.

### B.    Section 51 of the New York Civil Rights Act

Plaintiffs' Second Cause of Action alleges that Defendants "violated N.Y. Civil Rights Law §§ 50–51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on DiCarlo's social media accounts altered Images of Plaintiffs." (Dkt. No. 1, ¶ 61). Together, NYCRL §§ 50 and 51 "create a private right of action . . . for the use of a living person's picture for advertising or trade purposes without that person's written consent." *Bondar*, 2012 WL 6150859, at *6, 2012 U.S. Dist. LEXIS 175873, at *23. "[C]laims must be brought within one year from the date that the offending material is first published." *Toth*, 2019 WL 96664, at *11,

---

[7] The Court notes that even if Plaintiffs had failed to allege bad faith, Defendants would not necessarily be entitled to judgment as a matter of law as it is one factor to be weighed among the rest. *See Toth*, 2019 WL 95564, at *9, 2019 U.S. Dist. LEXIS 1355, at *25 (granting Plaintiff Electra's summary judgment on a false endorsement claim to even though "it [was] clear that defendants did not intend to capitalize on plaintiff's good will" and there was no bad faith).

2019 U.S. Dist. LEXIS 1355, at *29 (citing N.Y. C.P.L.R. 215(3)); *see also Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007).

Defendants argue that the "[p]ictures produced by Plaintiffs appear to have been published over a year before the filing of their complaint on March 8, 2018. As such, any and all state claims under the NYCRL are time barred and must be dismissed." (Dkt. No. 63-1, at 12). Plaintiffs contend that Defendants failed to raise this affirmative defense in either their original Answer (Dkt. No. 21) or their Amended Answer (Dkt. No. 37), and so the "defense is precluded under Rule 8(c) of the Federal Rules of Civil Procedure" and has been waived. (Dkt. No. 70, at 13).

"Rule 8(c) of the Federal Rule of Civil Procedure provides that the statute of limitations, as an affirmative defense, must be set forth in a party's responsive pleading." *Funk v. F & K Supply, Inc.*, 43 F. Supp. 2d 205, 221 (N.D.N.Y. 1999). The statute of limitations "must be asserted in a party's responsive pleading 'at the earliest possible moment' and is a personal defense that is waived if not promptly pleaded." *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (quoting *Santos v. District Council*, 619 F.2d 963, 967 n.5 (2d Cir. 1980)).

In this case, Defendants did not raise the statute of limitations defense in either their original Answer or Amended Answer. (Dkt. Nos. 21; 37). Given this failure, the Court denies their motion for judgment on the pleadings for Plaintiffs' Second Cause of Action because, as Plaintiffs correctly argue, "[a] claim that a statute of limitations bars a suit is an affirmative defense, and, as such, it is waived if not raised in the answer to the complaint." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 752 (2d Cir. 1992) (citing Fed. R. Civ. P. 8(c)).

In their reply, Defendants do not dispute that they waived their statute of limitations defense. (Dkt. No. 73, at 6). Rather, Defendants argue that "an amendment of the complaint will

allow the Defendants to raise this defense in their answer." (*Id.*). Even if that is the case, as Plaintiffs have not yet amended their complaint, it is premature for the Court to consider this argument.

Accordingly, Defendants' motion for judgment on the pleadings for Plaintiffs' claims arising under N.Y. Civil Rights Law is denied.

### C.    New York Business Law § 349

Plaintiffs' Third Cause of Action arises under NYGBL § 349, which prohibits "[d]eceptive acts or practice in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N. Y. Gen. Bus. Law § 349(a). Defendants argue that "the overwhelming majority of courts in this Circuit have concluded that 'the general variety of consumer confusion that is the gravamen of [a false endorsement claim]' is an insufficient harm to the public interest for the purposes of NYGBL § 349." (Dkt. No. 63-1 (quoting *Mayes v. Summit Entm't Corp. ("Mayes II")*, 287 F. Supp. 3d 200, 206 (E.D.N.Y. 2018)). Plaintiffs, conversely, argue that discovery on this claim should be allowed because they have "alleged a consumer-oriented attempt [on behalf of] Defendants to mislead consumers for their own commercial gain." (Dkt. No. 70, at 18).

"The elements of a deceptive trade practices claim under NYGBL § 349 are: '(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result.'" *Toth*, 2019 WL 95564, at *13, 2019 U.S. Dist. LEXIS 1355, at *36 (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)). "The gravamen of" a complaint brought under NYGBL § 349 "must be consumer injury or harm to the public interest." *Gibson*, 391 F. Supp. 3d at 251 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995) (internal quotation marks and citation omitted)). This is because "the statute is, at its core, a consumer protection device." *Securitron*, 65 F.3d at 264.

"[T]he prevailing view in the Second Circuit is that trademark infringement claims are not cognizable under [§ 349(a)] unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Deep Foods Inc. v. Deep Foods Inc.*, No. 18-cv-01256, 2019 WL 7183217, at *8, 2019 U.S. Dist. LEXIS 221101, at *22 (W.D.N.Y. Dec. 26, 2019) (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012)). Courts have found that "trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under NY GBL § 349." *Id.* (quoting *Sola Franchise Corp. v. Sola Salon Studios, LLC*, No. 14-cv-0946, 2015 WL 1299259, at *14, 2015 U.S. Dist. LEXIS 35901 (E.D.N.Y. March 23, 2015); *see A.V.E.L.A.*, 131 F. Supp. 3d at 217 (noting that "the public harm that results from trademark infringement is too insubstantial to satisfy the pleading requirements of § 349") (quoting *Perfect Pearl Co.*, 887 F. Supp 2d at 542). Accordingly, courts faced with similar claims about strip clubs using models' images without their consent have dismissed the claims arising under § 349 because "plaintiffs' [sic] do not allege an injury to the public interest above and beyond the general variety of consumer confusion." *Toth*, 2019 WL 95564, at *13–14, 2019 U.S. Dist. LEXIS 1355, at *37 (internal quotation marks omitted); *see also Gibson*, 391 F. Supp. 3d at 251–52; *Mayes v. 490 Habitat, Inc. ("Mayes III")*, No. 18-cv-1427, 2019 WL 2435765, at *4, 2019 U.S. Dist. LEXIS 35270, at *8–9 (E.D.N.Y. Mar. 4, 2019)*; Mayes II*, 287 F. Supp. 3d at 211.

Plaintiffs argue the Court should not reach the same conclusion here because here they have alleged "Defendants' creation and implementation, for their own commercial benefit, of an advertising campaign which sought to misrepresent to consumers at large the women who worked as strippers at DiCarlo's." (Dkt. No. 70, at 17–18). In support of this view, Plaintiffs cite

two cases: *Voronina v. Scores Holding Co., Inc.*, No. 16-cv-2477, 2017 WL 74731, at *4, 2017 U.S. Dist. LEXIS 1858, at *13 (S.D.N.Y. Jan. 5, 2017), and a bench decision in *Edmondson v. RCI Hosp. Holdings, Inc.,* No. 16–cv–2242 (S.D.N.Y. filed Mar. 26, 2016).

The Court is unpersuaded. While the Court recognizes that there is a minority view, having reviewed the caselaw, and the thorough analysis of both views in *Mayes II,* the Court declines to adopt it. In *Mayes II*, as here, the plaintiffs alleged that the publication of their images was "misleading in a material respect because it created the impression that Plaintiffs were strippers working at the Clubs, or endorsed the Clubs." *Mayes II*, 287 F.Supp. 3d at 211. While Plaintiffs contend that they alleged "a consumer-oriented attempt [on behalf of] Defendants to mislead consumers for their own commercial gain," the "'gravamen' of Plaintiffs' complaint is their private dispute with Defendants about whether or not Defendants should have used their pictures without their consent." *Gibson*, 391 F. Supp. 3d at 251. As in *Mayes II*, "Plaintiffs have failed to allege a consumer-oriented harm greater than consumer confusion, a harm which is insufficient to support a claim under Section 349." *Mayes II*, 287 F. Supp. 3d at 211. Accordingly, Defendants' motion for judgment on the pleadings for Plaintiffs' claims under § 349 is granted.

### D.     Individual Liability

Defendants argue that all claims against Defendant Collins in her individual capacity should be dismissed because "Plaintiffs do not allege that Tess Collins exercised complete control over the corporation with respective [sic] to the subject transactions." (Dkt. No. 63-1, at 13). Plaintiffs, on the other hand, contend that they have "more than sufficiently alleged that Ms. Collins is personally liable for the misappropriations complained of" under the Lanham Act because her role as "the principal and CEO" of DiCarlo's means "she controlled all advertising

relating to DiCarlo's and thus was responsible for the creation and publication of the advertisements." (Dkt. No. 70, at 19).

As Defendants contend, "an individual is not automatically liable for the violations for the company whose stock he or she owns." *Mayes I*, 2018 WL 566314, at *15, 2018 U.S. Dist. LEXIS 8902, at *37 (citing *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490-91 (S.D.N.Y. 2011) (citation omitted)). Under the Lanham Act, "personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind [the corporation's] infringement." *Mayes II*, 287 F. Supp. 3d at 211–12 (quoting *Johnson & Johnson Consumer Cos. v. Ami*, 540 F. Supp. 2d 374, 393 (E.D.N.Y. 2008)). An officer is considered "a moving, active conscious force" when they are "either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." *Id.* (quoting *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 155 (E.D.N.Y. 2016)).

In this case, Plaintiffs have alleged that Collins is "the owner, principal and/or chief executive [of] S. DiCarlo," (Dkt. No. 1, ¶ 7), and she was "identified by the New York State Liquor Authority as the principal of DiCarlo's, and listed by the New York Secretary of State as the Chief Executive Officer of S. DiCarlo Restaurant." (*Id.* ¶ 13). They have thus failed to allege either that she is "the sole shareholder" or that she was a "direct participant in the infringing activity." *See Mayes II*, 287 F. Supp. 3d at 212 (quoting *Innovation Ventures*, 176 F. Supp. 3d at 155).

In *Mayes II*, for example, the court allowed the claims against the owner of the defendant corporation to proceed because the plaintiffs' complaint had alleged that "in his capacity as principal of [corporation], [he] 'maintains operational control over [club], including all

advertising relating thereto.'" 287 F. Supp. 3d at 212. The court found this allegation adequate to survive a motion to dismiss because it alleged the owner "maintain[ed] operational control over the club" and "that he participated in the wrongful conduct complained of." *Id.* Here, Plaintiffs solely allege that Collins is the principal of DiCarlo's and fail to allege that she directly participated in the wrongful conduct. Plaintiffs contend that Collins is personally liable because as the CEO "she controlled all advertising relating to DiCarlo's." (Dkt. No. 70, at 19). However, that allegation is not in the Complaint. (*See* Dkt. No. 1). Accordingly, the Court dismisses the claims against Collins in her individual capacity.[8]

However, "there is a strong preference for allowing plaintiffs to amend inadequate pleadings." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 07-cv-10453, 2011 WL 4357166, at *2, 2011 U.S. Dist. LEXIS 103061, at *7 (S.D.N.Y. Sept. 13, 2011). Given that a valid claim might be stated against Collins in an amended complaint, the Court grants Plaintiffs leave to amend its Complaint within 30 days of the date of this Order.

### E. Costs and Fees

Plaintiffs request that "costs and fees should be awarded" to them because "although [Defendants] bring their motion under Rule 12 Defendants argue Plaintiffs' claims should be evaluated under the far more rigorous standard of Rule 56" and that "Defendants do not offer a

---

[8] Defendants argue that "any federal and state claims against Defendant Collins in her individual capacity must be outright dismissed." (Dkt. No. 63-1, at 13). In response, Plaintiffs only argued why Collins should not be dismissed for the Lanham Act claim. (Dkt. No. 70, at 18–19). Plaintiffs therefore did not respond to Defendants' argument as for why the state claims against Collins should be dismissed. As such, the Court finds that Plaintiffs have abandoned their NYCRL claim—the only remaining state claim—against Collins. *See Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018) ("District courts in this circuit have found that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'" (collecting cases) (quoting *Youmans v. Schiro*, No. 12-cv-3690, 2013 WL 6284422, at *5, 2013 U.S. Dist. LEXIS 171180, at *12 (S.D.N.Y. Dec. 3, 2013))). Even if the Court did not consider the claim abandoned, "there is nothing in the record to support a piercing of the corporate veil or any other theory of liability implicating individual defendants," *Toth*, 2019 WL 95564, at *5, 2019 U.S. Dist. LEXIS 1355, at *12, given the sole allegations against Collins are that she is the principal of DiCarlo's. (Dkt. No. 1, ¶¶ 7, 13).

scintilla of authority as to why this Court should apply such [a] standard on a motion brought

under Rule 12." (Dkt. No. 70, at 6). To the extent that Plaintiffs' request can be considered a

request under Rule 11 of the Federal Rules of Civil Procedure, it is improper. Under Rule 11, "a

motion for sanctions *must be made separately from any other motion* and must describe the

specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2) (emphasis added).

While a court may impose sanctions under its inherent power, to do so the court "must find that:

(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith,

i.e., motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital

Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). That standard is plainly not met here, particularly since

Defendants' motion for judgment on the pleadings was partially granted.

## V.       CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 63) is

**GRANTED in part and DENIED in part**; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 63) is

**DENIED** as to Plaintiffs' Lanham Act (First Cause of Action) and NYCRL §§ 50–51 claims

against DiCarlo's (Second Cause of Action); and it is further

**ORDERED** that the Complaint's NYGBL § 349 claim (Third Cause of Action) is

**DISMISSED**; and it is further

**ORDERED** that all claims against Defendant Tess Collins are **DISMISSED**; and it is

further

**ORDERED** that Plaintiffs' request for costs and fees, (Dkt. No. 70, at 5), is **DENIED**;

and it is further

**ORDERED** that Plaintiffs may amend the Complaint within **THIRTY (30) days** of the date of this Order with respect to Defendant Tess Collins. If no amended Complaint is filed the Clerk is directed to terminate Tess Collins as a defendant.

**IT IS SO ORDERED.**

Dated: January 28, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge