# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

LUCY PINDER, IRINA VORONINA, and
CARMEN ELECTRA,

                                                                   1:18-cv-00296 (BKS/ATB)

                            Plaintiffs,

v.

S. DICARLO, INC., d/b/a DICARLO'S
GENTLEMEN'S CLUB, and TESS COLLINS,

                            Defendants.

---

S. DICARLO, INC., d/b/a DICARLO'S
GENTLEMEN'S CLUB and TESS COLLINS,

                            Third-Party Plaintiffs,

v.

RED BLUE MEDIA, INC., CHRISTOPHER ROSIAK,
5 LION ENTERPRISES, LLC, and JACK
AXAOPOULOS,

                            Third-Party
                            Defendants.

---

**Appearances:**

*For Third-Party Plaintiffs:*
Gregory J. Teresi
Bartlett, Pontiff, Stewart & Rhodes, P.C.
One Washington Street
PO Box 2168
Glens Falls, New York 12801

*For Third-Party Defendants 5 Lion Enterprises, LLC and Jack Axaopoulos:*
Robert E. Ganz
Lippes Mathias Wexler Friedman LLP
54 State Street, Suite 1001
Albany, New York 12207

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.   INTRODUCTION**

Plaintiffs Lucy Pinder, Irina Voronina, and Carmen Electra bring this action against Defendants S. DiCarlo, Inc., d/b/a DiCarlo's Gentlemen's Club, and Tess Collins regarding images that Defendants allegedly posted of them without their consent. (Dkt. No. 1). In turn, S. DiCarlo, Inc. and Tess Collins (collectively, "DiCarlo's") filed a Third-Party Complaint against 5 Lion Enterprises, LLC ("5 Lion") and Jack Axaopoulos.[1] (Dkt. No. 44). The Third-Party Complaint alleges four causes of action, including negligence/gross negligence (First Claim), indemnification (Second Claim), contribution (Third Claim), and fraud (Fourth Claim).[2] (*Id.*). Presently before the Court is 5 Lion's motion to dismiss under Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, (Dkt. No. 54), which DiCarlo's opposes. (Dkt. No. 75). For the reasons that follow, 5 Lion's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction is granted.

**II.   FACTS[3]**

The Court presumes the parties' familiarity with its January 28, 2020 decision, which recites the factual background of this case. *Pinder v. S. DiCarlo, Inc.*, No. 18-cv-00296, 2020 WL 437000, at *1–2, 2020 U.S. Dist. LEXIS 13607, at *1–5 (N.D.N.Y. Jan. 28, 2020).

---

[1] DiCarlo's also filed a Third-Party Complaint against Red Blue Media, Inc. and Christopher Rosiak. (Dkt. No. 38). However, those parties have defaulted and are not involved with the pending motion. (Dkt. Nos. 48–50).

[2] In its opposition, DiCarlo's "withdraws its complaint against Jack Axaopoulos, personally, as well as its cause of action for fraud." (Dkt. No. 75, at 10). 5 Lion and Jack Axaopoulos do not contest these withdrawals. (*See* Dkt. No. 78). Accordingly, Jack Axaopoulos will be dismissed from the case as will the fraud claim. Thus, the Court only considers whether it has personal jurisdiction over 5 Lion.

[3] The facts are drawn from the original Complaint, the Third-Party Complaint, and the affidavits submitted by the Third-Party Defendants, (Dkt. Nos. 1, 44, 54-1, 77). The Court assumes the truth of the well-pled facts in the complaints, *Truman v. Brown*, No. 19-cv-1546, 2020 WL 353615, at *6, 2020 U.S. Dist. LEXIS 11521, at *15 (S.D.N.Y. Jan. 21, 2020), and all of the facts are construed in the light most favorable to DiCarlo's. *Yellow Page Sols.*,

DiCarlo's, a gentlemen's club in Albany, New York, is "in the business of selling alcohol and food in an atmosphere were [sic] nude and/or semi-nude women entertain the business' [sic] clientele." (Dkt. No. 1, ¶ 28). Tess Collins is "the owner, principal, and/or chief executive" of DiCarlo's. (*Id.* ¶¶ 7, 13).

5 Lion "is a limited liability company with a principal place of business" in Raleigh, North Carolina. (Dkt. No. 44, ¶ 1; Dkt. No. 54-1, ¶ 6(a)). Jack Axaopoulos is "the sole member and owner of" 5 Lion and is a resident of North Carolina. (Dkt. No. 54-1, ¶¶ 1, 6(b)). 5 Lion "operated a now defunct website known as motifake.com." (Dkt. No. 44, ¶¶ 1–2).

DiCarlo's posted images of Plaintiffs Pinder, Voronina, and Electra to "promote DiCarlo's on its Facebook and Instagram pages." (Dkt. No. 1, ¶¶ 20, 23, 26). Plaintiffs have never been employed at DiCarlo's and the images were used "without any of the Plaintiffs' knowledge, consent, or authorization . . . [or] remuneration." (*Id.* ¶¶ 18, 21, 24, 27). DiCarlo's "obtained at least one of said images . . . from [5 Lion] as a business that creates, prepares, and/or distributes various promotions, advertisements and images to be used by the general public." (Dkt. No. 44, ¶ 9).

5 Lion has never had an office, employees, bank accounts, or phone numbers in New York. (Dkt. No. 54-1, ¶ 6(c)). It hosted its website on servers located in California, Texas, and Florida, not in New York. (*Id.* ¶ 6(d)). Additionally, it "has never registered with the New York Secretary of State for authority to do business in New York, holds no licenses, authorizations or qualifications in the State of New York; [and] has no contracts with New York State based

---

*Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-cv-5663, 2001 WL 1468168, at *1, 2001 U.S. Dist. LEXIS 18831, at *3 (S.D.N.Y. Nov. 19, 2001).

residents or businesses." (*Id.*). It "does not have, and did not have, any business transactions with New York residents or businesses." (*Id.*).

5 Lion "maintained the website www.motifake.com" ("motifake") in which "public users of the site posted a type of popular internet mem[e] known as a 'demotivational poster'" that they had either "obtained or created from other sources or websites" or "created using a tool on the motifake website." (*Id.* ¶ 13). This tool "puts a frame around the user's image, and allowed them to add some funny text." (*Id.*). The images "could then be posted to Facebook, other websites, stored on [the user's] computer, [or] posted to Motifake.com." (*Id.*). "[V]isitors to the site could rate the poster" or post comments on the site. (*Id.* ¶ 14).

5 Lion "review[ed] the third-party created poster" and would "approve or reject it." (*Id.* ¶ 15). It would consider whether the poster "was obscene, or otherwise inappropriate" and whether "the image had <u>displayed on it</u> a copyright notice." (*Id.*). 5 Lion would not use "the website's tools to substantively add to or change the content" of the "posters." (*Id.*). However, it would add "'tags' to help locate the specific poster on the website." (*Id.*). The website did not provide a "mechanism for downloading photos by persons visiting the site." (*Id.* ¶ 16).

The motifake website generated revenue through the "Google AdSense Program." (*Id.* ¶ 17). This program "allowed Google's servers to directly communicate with the users of the website with ads that Google determined, through its algorithms, would appeal to such users." (*Id.*). There "is no purchase function on the website and there is no membership fee required to access the website." (Dkt. No. 77, ¶ 6). The website was "generally available to anyone with internet connection." (Dkt. No. 54-1, ¶ 6(g)).

DiCarlo's alleges that 5 Lion "represented that they purchased and/or owned the right and authority to use, display and distribute the photographs, images and designs included in the . . .

images they prepared and/or distributed." (Dkt. No. 44, ¶ 10). It was "aware that the images were offered to the general public including [DiCarlo's]." (*Id.* ¶ 12). 5 Lion "prepared some of the images depicted in the Exhibits attached to [DiCarlo's] Complaint and provid[ed] those images" to DiCarlo's. (*Id.* ¶ 16).[4] 5 Lion "led [DiCarlo's] to believe that [DiCarlo's] had the right and authority to use, display and distribute the advertisements, images and designs offered by" 5 Lion. (*Id.* ¶ 15). In its negligence claim DiCarlo's alleges that 5 Lion acted unreasonably and breached a duty of care owed to DiCarlo's "[b]y failing to obtain all appropriate permissions or licenses." (*Id.* ¶ 24). DiCarlo's also alleged claims for indemnification and contribution to the extent it is found liable to Plaintiffs. (*Id.* at 6–7*)*.

### III. STANDARD OF REVIEW

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Entm't, Inc. v. Centennial Pictures, Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). When the issue of personal jurisdiction is decided "on the pleadings and without discovery, the plaintiff need show only a prima facie case." *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). A prima facie showing "must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (alteration in original) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

---

[4] Third-Party Defendants have submitted affidavits stating that they did not create the images "which are the subject of this lawsuit." (Dkt. No. 54-1, at 6 n.1; Dkt. No. 77, ¶ 9).

In reviewing a Rule 12(b)(2) motion, the Court "may refer to evidence outside the pleadings." *Shepherd v. Annucci*, 921 F.3d 89, 95 (2d Cir. 2019). Courts must "construe the pleadings and affidavits in the light most favorable" to the plaintiff and resolve "all doubts" in the plaintiff's favor. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). The plaintiff's allegations must provide "factual specificity necessary to confer jurisdiction." *Jazini ex rel. Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998). Conclusory statements, including legal conclusions, without supporting facts are insufficient. *Id.* A court does not err in denying jurisdictional discovery where the plaintiff has failed to make a prima facie case of personal jurisdiction. *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18–19 (2d Cir. 2015).

## IV. DISCUSSION

5 Lion argues that the Court lacks personal jurisdiction because "there is no purposeful availment here and thus no minimum contacts permitting the constitutional exercise of jurisdiction within due process limits." (Dkt. No. 54-5, at 11). DiCarlo's responds that 5 Lion "'purposefully availed' [itself] to users in New York" and thus the Court has personal jurisdiction. (Dkt. No. 75, at 4).

### A. Personal Jurisdiction Principles

To "exercise personal jurisdiction over a defendant, a district court must possess a statutory basis for doing so." *Troma*, 729 F.3d at 218. Generally, such a statutory basis "is determined by the law of the state in which the court is located." *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). Thus, the personal jurisdiction analysis here must begin with New York law. The second step of the analysis is to determine whether the exercise of jurisdiction over the defendant is in accordance with constitutional due process. *See Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015).

A "court may exercise two types of personal jurisdiction over a corporate defendant properly served with process": "general" and "specific." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). General jurisdiction subjects a defendant to suit on any claims, whether or not they arise from the defendant's dealings in the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Therefore, a foreign corporation's contacts with the forum must be so "continuous and systematic" that it is "essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). In *Daimler*, the Supreme Court clarified that the two paradigm bases of general jurisdiction for a corporation are its place of incorporation and its principal place of business, and only "in an exceptional" case would it also be at home in another forum. 571 U.S. at 137, 138 n.19.

Specific jurisdiction, on the other hand, concerns the exercise of jurisdiction where the claims arise out of the defendant's contacts with the forum. *See id.* at 126–27. There must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919 (internal quotation marks and alteration omitted); *accord Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) ("The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." (internal quotation marks omitted)). In this case, 5 Lion has its principal place of business in North Carolina, (Dkt. No. 54-1, ¶ 6(a)), and DiCarlo's does not contend that 5 Lion's "contacts with New York are so continuous and systematic that it is subject to the jurisdiction of courts in New

York on a general jurisdiction theory." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (internal citation and quotation marks omitted) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). Thus, the Court confines its analysis to specific jurisdiction.

### B. Specific Jurisdiction Under New York's Statutory Requirements

5 Lion moves to dismiss the Third-Party Complaint on the ground that it is not amenable to specific jurisdiction in New York under any of the provisions of New York Civil Practice Law and Rules ("CPLR") 302, New York's long-arm statute. (Dkt. No. 54-5, at 8–10). DiCarlo's asserts that specific jurisdiction over 5 Lion exists pursuant to § 302(a)(1) (transaction of business within the state), § 302(a)(2) (commission of a tortious act within the state), and § 302(a)(3) (commission of tortious acts without the state causing injury within the state). (Dkt. No. 1, ¶ 4; Dkt. No. 75, at 4–7). The Court considers each provision in turn.

#### 1. Transacting Business – CPLR 302(a)(1)

CPLR 302(a)(1) permits the exercise of jurisdiction over a nondomiciliary when the claim arises from the "transact[ion of] any business within the state or contract[] anywhere to supply goods or services in the state." A finding of jurisdiction under this provision requires that: (1) a defendant "transacts any business" in New York and (2) the claim "arises from" such transaction. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

A defendant transacts business within the state if it is engaged in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within [New York]." *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007) (alteration in original) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967)). "Purposeful availment is the 'overriding criterion' necessary to establish personal jurisdiction pursuant to § 302(a)(1), and requires more than 'random, fortuitous, or attenuated contacts.'" *Philpot v. Kos Media LLC*, No.

8

16-cv-01523, 2017 WL 2270248, at *9, 2017 U.S. Dist. LEXIS 62135, at *20 (S.D.N.Y. Apr. 21, 2017) (quoting *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 358 (S.D.N.Y. 2009)), *report and recommendation adopted*, No. 16-cv-1523, 2017 WL 2269531, 2017 U.S. Dist. LEXIS 79229 (S.D.N.Y. May 23, 2017). This occurs when "a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Capitol Records*, 611 F. Supp. 2d at 358 (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007) (internal quotation marks omitted)).

When "a plaintiff invokes New York's long-arm statute to sue a nonresident defendant based on its operation of a website, 'the jurisdictional inquiry requires considerations particular to that medium.'" *Philpot*, 2017 WL 2270248, at *10, 2017 U.S. Dist. LEXIS 62135, at *23 (quoting *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009)). Specifically, "courts consider where the particular website lies on the 'spectrum of interactivity.'" *Id.* (quoting *Royalty Network*, 638, F. Supp. 2d at 418 (internal quotation marks omitted)). "'Passive' websites, which merely make information available to viewers, have 'been analogized to an advertisement in a nationally-available magazine or newspaper, and [do] not without more justify the exercise of jurisdiction over the defendant.'" *Philpot*, 2017 WL 2270248, at *10, 2017 U.S. Dist. LEXIS 62135, at *23 (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)). "Interactive" websites, on the other hand, which are "are used to purposefully sell goods or services in New York, or charge membership fees to registered users in New York, can be sufficient to trigger jurisdiction under § 302(a)(1) where the cause of action arises out of such purposeful activity." *Id.*

However, in this case, locating the motifake website "on a 'spectrum of activity' is of limited utility because it lies in the middle of such a spectrum." *Capitol Records*, 611 F. Supp. 2d

9

at 358. The motifake website "is not wholly passive because it does more than make information available to interested users." *Id.* Users can interact with the website by posting content on it; using the tools provided to create "posters"; and post the images to Facebook, other websites, or the user's computer. (Dkt. No. 54-1, ¶¶ 13–14). However, 5 Lion "does not conduct traditional business over the internet because it neither sells goods nor services." *Capitol Records*, F. Supp. 2d at 358. Additionally, viewers are not required to pay a membership fee or register to view the website's content. *Philpot*, 2017 WL 2270248, at *10, 2017 U.S. Dist. LEXIS 62135, at *24 (finding that a website was in a "middle ground" between passive and interactive because it "charge[d] for advertising" but did not "require viewers to register or pay a membership fee" to access content); *see also Royalty Network*, 638 F. Supp. 2d at 419 (noting that a website was not fully "interactive" and fell "somewhere in the 'middle ground'" because it did not sell goods or services and did not charge a membership fee).

Given that the motifake website falls "in this middle category of cases," "[t]he existence of jurisdiction . . . depends on the nature and frequency of activity of the defendant." *Realuyo v. Villa Abrille*, No. 01-cv-10158, 2003 WL 21537754, at *6, 2003 U.S. Dist. LEXIS 11529, at *20 (S.D.N.Y. July 8, 2003), *aff'd* 93 F. App'x 297 (2d Cir. 2004). "Mere interactivity is not enough to support jurisdiction under Section 302(a)(1)," rather, "some evidence [of] volitional activities directed at the forum is required." *Capitol Records*, 611 F. Supp. 2d at 359.

In this case, the analysis is further "complicated by the fact that [5 Lion] does not sell products or services to its users, but rather 'sells' the users' attention to advertisers." *Id.* Specifically, the motifake website generated revenue through the Google AdSense Program, "which allowed Google's servers to directly communicate with the users of the website with ads that Google determined . . . would appeal to such users. Google controls which users see which

ads." (Dkt. No. 54-1, ¶ 17). According to DiCarlo's, this establishes personal jurisdiction because the website "allows algorithms to actively target its users 'internationally as well as throughout the United States'" and thus 5 Lion has "'purposefully availed' [itself] to users in New York." (Dkt. No. 75, at 4 (quoting Dkt. No. 54-1, ¶ 6(e))).

The Court disagrees. DiCarlo's has not alleged any facts suggesting that 5 Lion specifically targeted New York users or otherwise purposefully availed itself of New York. DiCarlo's assertion that 5 Lion drew users "internationally as well as throughout the United States," and thus New York users were targeted, is unpersuasive. (Dkt. No. 75, at 5 (quoting Dkt. No. 54-1, ¶ 6(e))). "A website 'directed at the entire United States' does not transact business in New York where the operator has 'manifested no intent specifically to target New York . . . or to avail [itself] of the particular benefits of New York law.'" *Coll. Essay Optimizer, LLC v. Edswell, Inc.*, No. 14-cv-8586, 2015 WL 5729681, at *5, 2015 U.S. Dist. LEXIS 133488, at *13 (S.D.N.Y. Sept. 30, 2015) (quoting *Girl Scouts of U.S. v. Steir*, 102 F. App'x 217, 219 (2d Cir. 2004)); *see also ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 87 (E.D.N.Y. 2006) ("Courts are reluctant to find personal jurisdiction unless the website specifically targets New Yorkers, or is aimed at New York users."). The images users posted to the motifake website were "publicly-available" and "equally accessible to viewers anywhere in the world," and thus are insufficient to show that 5 Lion purposefully availed itself of New York. *Philpot*, 2017 WL 2270248, at * 11, 2017 U.S. Dist. LEXIS 62135, at *26.

*Capitol Records* is instructive. There, the defendant's website provided social networking services to users, including the capability to upload and view video files (some of which allegedly infringed the plaintiffs' copyrights). 611 F. Supp. 2d at 359. The website generated revenue through advertisements. *Id.* The court stated that "much of [the defendant's] interaction

11

with its New York users . . . lacks the traditional indicia of 'purposeful availment' because it is neither volitional nor distinguishable from its interaction with users located in any other jurisdiction." *Id.* As here, the "bulk of the content on the [defendant's] website is created by users whose interactions with one another . . . are registered automatically and without input from [the defendant's] employees." *Id.* Despite the "sheer availability" of the infringing videos, personal jurisdiction was not warranted on those grounds because "the video files were uploaded by unsolicited registered users acting unilaterally and were equally available to all other . . . users regardless of their location." *Id.* The court concluded that "without additional factual allegations of purposeful actions directed at New York *qua* New York, [the defendant's] provisions of social networking services to its New York users does not constitute transaction of business under Section 302(a)(1)."[5] *Id.* at 360.

In this case, DiCarlo's fails to allege that 5 Lion engaged in any purposeful actions directed specifically at New York users or advertisers. Its interactions with New York residents are not "'distinguishable from [defendants'] interaction with [those] located in any other jurisdiction,'" and thus the allegations "are insufficient because they 'lack[] the traditional indicia'" of purposeful availment. *Royalty Network*, 638 F. Supp. 2d at 421 (quoting *Capitol Records*, 611 F. Supp. 2d at 359). Thus, the well-pleaded factual allegations do not permit this Court to exercise specific jurisdiction over 5 Lion under CPLR 302(a)(1).

---

[5] The court in *Capitol Records* ultimately concluded that there was personal jurisdiction because the plaintiff alleged that the defendant "sold advertisements to New York companies and sought to participate in advertising campaigns specifically directed at New York users" and "these actions constitute the required 'something more' that, when combined with the volume of [the defendant's] internet activity in New York, make clear that [the defendant] 'transacts business' in New York." *Id.* at 360–61. Here, however, there are no such allegations. *See Royalty Network*, 638 F. Supp. 2d at 421 (finding a lack of personal jurisdiction because, inter alia, "there [was] nothing in the record to indicate defendants sold to, or interacted with, the New York office of any of its advertisers or that defendants had knowledge that any of those advertisers were headquartered in New York").

### 2. Tortious Act Within State – CPLR 302(a)(2)

CPLR 302(a)(2), in relevant part, provides for jurisdiction when the claim arises from a defendant's "commi[ssion of] a tortious act within the state." A "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999); *see also Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 803 (S.D.N.Y. 2015) (remarking that "the Second Circuit continues to adhere to the traditional, stricter rule . . . requiring the defendant to physically commit the tortious act within New York"), *aff'd*, 660 F. App'x 43 (2d Cir. 2016). While the Third-Party Complaint alleges that 5 Lion "committed a tortious act within the State of New York," it did not set forth any specific factual allegations that 5 Lion was physically present in New York. Given that the "website [was] created and maintained outside New York," (Dkt. No. 54-5, at 11), there can be no personal jurisdiction under § 302(a)(2).

### 3. Injury Within State – CPLR 302(a)(3)

To establish jurisdiction under CPLR 302(a)(3)(ii), "a plaintiff must demonstrate that: '(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.'" *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 484 (S.D.N.Y. 2013) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 498–99 (2d Cir. 2011)).

DiCarlo's has failed to allege sufficient facts to make a prima facie case that 5 Lion "derives substantial revenue from interstate or international commerce," the fifth prong of CPLR § 302(a)(3)(ii). This "substantiality prong, in effect, represents a 'bigness requirement,'" "'designed to assure that the defendant is economically big enough to defend suit in New York.'"

*Related Cos., L.P. v. Ruthling*, No. 17-cv-4175, 2017 WL 6507759, at *7, 2017 U.S. Dist. LEXIS 207857, at *20 (S.D.N.Y. Dec. 18, 2017) (quoting *Ingraham v. Carroll*, 687 N.E.2d 1293, 1296 (N.Y. 1997) (internal quotation marks omitted)). While "[t]here is no specific dollar threshold at which revenue becomes 'substantial' . . . courts look to either the percentage of a party's overall revenue derived from interstate commerce, or to the absolute amount of revenue generated by a party's activities in interstate commerce." *Light v. Taylor*, No. 05-cv-5003, 2007 WL 274798, at *4, 2007 U.S. Dist. LEXIS 5855, at *11 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 317 F. App'x 82 (2d Cir. 2009). The "main concern is the 'overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.'" *Id.* (quoting *Pariente v. Scott Meredith Literary Agency*, No. 90-cv-0547, 1991 WL 19857, at *4, 1991 U.S. Dist. LEXIS 1607, at *12 (S.D.N.Y. Feb. 11, 1991)). For example, in *Light*, the Second Circuit affirmed the district court's ruling that $1,500 worth of online revenue over five years was not sufficient to justify personal jurisdiction. *Light*, 317 F. App'x at 84; *see also Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 317 (S.D.N.Y. 1986) (holding that there was no personal jurisdiction under CPLR § 302(a)(3)(ii) over an individual earning $6,500 from international commerce because he should not be "called upon to bear the expense and inconvenience of litigating in a distant forum").

In this case, as 5 Lion argues, "the Third-Party Complaint does not . . . allege anything with respect to 5 Lion's revenue generated in interstate commerce," (Dkt. No. 78, at 5 n.2), let alone that this revenue is "substantial." (*See* Dkt. No. 44). While Axaopoulos's affidavit states that "[a]lmost all of the revenue that [5 Lion] ever received" was from Google's AdSense Program, (Dkt. No. 54-1, ¶¶ 6(e), 17), there is no information about the amount of revenue. Given DiCarlo's failure to allege facts sufficient to make a prima facie case that 5 Lion's revenue

from interstate commerce is "substantial," it is not proper for the Court to exercise personal jurisdiction pursuant to CPLR 302(a)(3)(ii). *See Doe v. Del. State Police*, 939 F. Supp. 2d 313, 331 (S.D.N.Y. 2013) (finding that the plaintiffs failed to make a prima facie case of jurisdiction under CPLR § 302(a)(3)(ii) because, inter alia, "[t]he Complaint . . . alleges nothing" in regard to the defendant deriving "substantial revenue from interstate or international commerce"); *Shatara v. Ephraim*, 137 A.D.3d 1248, 1249 (N.Y. App. Div. 2016) (affirming the dismissal of a case for lack of personal jurisdiction when "the plaintiff failed to present any evidence that [the defendant] . . . derived substantial revenue from interstate or international commerce"); *see also Waggaman v. Arauzo*, 117 A.D.3d 724, 725 (N.Y. App. Div. 2014) (same).[6]

Furthermore, even assuming 5 Lion derives substantial interstate revenue, it is unclear whether DiCarlo's has adequately alleged "that the cause of action at issue 'arose' from" 5 Lion's tortious acts. *Lawson*, 930 F. Supp. 2d at 485 (quoting *Penguin Grp.*, 640 F.3d at 498–99). "In order to meet this element of the jurisdictional test, the out of state act 'must be so close to the injury that reasonable people would regard it as a cause of the injury.'" *Id.* (quoting *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 467 (S.D.N.Y.2008) (internal quotation marks omitted)). Proximate rather than "but-for" causation is required. *Art Leather Mfg. Co. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y.). "Common sense tells us that the New York statute cannot mean 'but-for' cause"—that the "injury would not have occurred if the act had not taken place." *Id.* If this were the causation standard, "New York courts would be

---

[6] The Court notes that jurisdiction is similarly inappropriate under CPLR 302(a)(3)(i), which subjects a defendant who "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state" to personal jurisdiction. Here, DiCarlo's has failed to allege that 5 Lion derives substantial revenue from business in New York. Furthermore, as discussed *supra* Section IV.B.1, DiCarlo's has failed to allege that 5 Lion engages in business or conduct activities in New York.

15

deluged with issues of remote, tangential and inconsequential causes of injuries suffered here."
*Id.*

Here, DiCarlo's must establish that 5 Lion's operation of the motifake website was the cause of it being sued by Plaintiffs. *See Tri-Coastal Design Grp., Inc. v. Merestone Merch., Inc.*, No. 05-cv-10633, 2006 WL 1167864, at *4, 2006 U.S. Dist. LEXIS 25307, at *13 (S.D.N.Y. May 3, 2006). Notably, DiCarlo's does not allege that the images on motifake's website were independently tortious—for example, there is no allegation that the images were copyrighted. Rather, DiCarlo's was sued because they allegedly used the images from motifake's website to advertise its business without the permission of Plaintiffs, potentially violating Section 43 of the Lanham Act and N.Y. Civil Rights Law §§ 50–51. (*See* Dkt. No. 1). The parties have not addressed whether the independent actions of DiCarlo's—using the images in commercial advertising—attenuated the causal chain connecting 5 Lion's allegedly tortious actions to the lawsuit. *Art Leather*, 888 F. Supp. at 568 (holding that proximate causation was not satisfied for the purposes of personal jurisdiction when a third-party's independent actions made the "tortious act too remote to be the cause of injury within the state of New York").

DiCarlo's alleges generally that the images on the motifake website "were offered to the general public including [DiCarlo's]"; that DiCarlo's "obtained at least one" of the images at issue in the underlying action from the website; and that 5 Lion "represented that they purchased and/or owned the right" to use and distribute the images. (Dkt. No. 44, ¶¶ 9, 10, 12). The complaint, however, is vague as to any representations concerning the use that users could make of the images. Without ever identifying any such representations, DiCarlo's alleges that it "relied upon" 5 Lion's representations *5 Lion* had the authority to use and distribute the images; that DiCarlo's "relied on" 5 Lion's representations that DiCarlo's "had the right and authority" to use

16

and distribute the images; and that 5 Lion "led" DiCarlo's "to believe" that DiCarlo's "had the right and authority to use, display and distribute" the images.[7] (Dkt. No. 44, ¶¶ 12, 14, 15) (emphasis added). There is no allegation that 5 Lion represented that the images could be used for commercial advertising. According to 5 Lion, "Nowhere on any website page was there an indication . . . that the images viewed on the website were available for commercial use by users of the website." (Dkt. No. 54-1, ¶ 18). Based on the Third-Party Complaint's well-pleaded factual allegations, it is reasonable to infer the motifake website offered images and that 5 Lion knew (or reasonably expected) that these images would be used, displayed, and distributed by users. However, while the motifake website allowed its users to "distribute" the memes from the site to their social media page, the causal chain connecting the ability to post these images to DiCarlo's use of the images to advertise its commercial business may not be "so close" to the injury (being sued for violating the Lanham Act) "that reasonable people would regard it as a cause of the injury." *Energy Brands*, 571 F. Supp. 2d at 467.

In any event, given DiCarlo's failure to make a prima facie showing that that 5 Lion derives substantial revenue from interstate commerce, the Court finds that personal jurisdiction in not warranted under CPLR 302(a)(3)(ii).[8]

### C. Pre-Amendment Letter and Conference

The Court recognizes that DiCarlo's could possibly allege facts to establish a prima facie case of personal jurisdiction, such that "filing an amended complaint would not be necessarily futile" as to the question of personal jurisdiction. *S.E.C. v. One or More Unknown Traders in*

---

[7] The Court does not credit the conclusory allegations contained within the Third-Party Complaint, including the allegation that 5 Lion "was aware" that the general public "would have the right to use, display and distribute the [images]," without any assertion of what this "right" is based on.. (See Dkt. No. 44, ¶¶ 12–13).

[8] Given the Court's finding that it lacks personal jurisdiction over 5 Lion based on New York's long-arm statute, it does not reach whether personal jurisdiction in this case would be constitutional or whether 5 Lion has immunity pursuant to 47 U.S.C. § 230.

*Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 254 (S.D.N.Y. 2013). While the court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the court "has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated." *Visco v. Brentwood Union Free Sch. Dist.*, 991 F. Supp. 2d 426, 436 (E.D.N.Y. 2014) (citations omitted). To the extent DiCarlo's seeks to amend its complaint, DiCarlo's must submit a letter not to exceed two pages in length by March 17, 2020, addressing whether amendment would be futile in light of this decision. 5 Lion may then respond with a letter not to exceed two pages, within one week of receiving DiCarlo's letter. Upon review, the Court will either issue an order regarding DiCarlo's request or schedule a conference with the parties to discuss the issues raised. No amendment or motion to amend may be filed until the Court enters an order with respect to the pre-amendment letter. This procedure is designed to enable the Court to fully consider whether an amendment would be futile before determining whether to permit amendment.

V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that DiCarlo's request to withdraw its fraud claim (Fourth Claim) and its claims against Third-Party Defendant Jack Axaopoulos is **GRANTED** and these claims are **DISMISSED without prejudice**; and it is further

**ORDERED** that the Clerk is directed to terminate Jack Axaopoulos as a Third-Party Defendant; and it is further

**ORDERED** that 5 Lion's motion to dismiss for lack of personal jurisdiction (Dkt. No. 54) is **GRANTED**; and it is further

**ORDERED** that the Third-Party Complaint (Dkt. No. 44) is **DISMISSED without prejudice**; and it is further

**ORDERED** that to the extent DiCarlo's seeks to amend the Third-Party Complaint it must comply with the pre-amendment letter procedure and submit a letter **by March 17, 2020** addressing whether, in light of this decision, amendment would be futile.

**IT IS SO ORDERED.**

Dated: March 3, 3020
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge